**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
|  | : |  |
| CORBETT A. WARREN, | : |  |
|  | : |  |
| Plaintiff, | : | Civ. No. 07-1266 (GEB) |
|  | : |  |
| v. | : | **MEMORANDUM OPINION** |
|  | : |  |
| CHRISTOPHER GELARDI, RICHARD | : |  |
| COLOMBARONI, JEFFREY BEVAN, | : |  |
| RICHARD ELLIS, BOROUGH OF | : |  |
| BOUND BROOK, CITY OF | : |  |
| SOMERVILLE, CITY OF MIDDLESEX | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

**BROWN, Chief Judge**

This matter comes before the court upon the motions for summary judgment of

defendants the Borough of Bound Brook ("Bound Brook") [Docket No. 32], the Borough of

Middlesex ("Middlesex") [Docket No. 31], Sergeant Richard Colombaroni ("Colombaroni")

[Docket No. 34], Corporal Jeffrey Bevan ("Bevan") and Patrolman Robert Ellis ("Ellis") [Docket

No.33] and Officer Christopher Gelardi ("Gelardi" and together, with Colombaroni, Bevan and

Ellis, the "Individual Defendants") and the Borough of Somerville ("Somerville" and together,

with Bound Brook and Middlesex, the "Municipal Defendants") [Docket No. 35] and the motion

to dismiss of Defendants Gelardi and Somerville [Docket No. 30].  This Court has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 1331 and 1367, and has considered the parties'

submissions and decided the matter without oral argument pursuant to Federal Rules of Civil

Procedure 78.  For the reasons set forth below, this Court will grant Defendant Bound Brook and

Middlesex's motions for summary judgment, grant in part and deny in part Defendants

Colombaroni, Bevan and Ellis, and Gelardi and Somerville's motions for summary judgment,

and deny Gelardi and Somerville's motion to dismiss.

## I.    BACKGROUND

### A.    Factual History

#### 1.    April 9, 2006 Incident

Sometime after 1:00 a.m. on April 9, 2006, Plaintiff Corbett A. Warren, also known as

Sabir H. Allah ("Plaintiff"), was driving a vehicle east on East Main Street in the Borough of

Somerville.  (Am. Compl., Section B, "Nature of the Case.")  At approximately the same time,

Officer Gelardi of the Somerville Police Department was on patrol and was driving a marked

police car traveling west on East Main Street.  (Bound Brook's SL. Civ. R. 56.1 Statement of

Material Facts ("Bound Brook Statement") at 7-8.)  According to Officer Gelardi's Investigation

Report ("Gelardi Investigation Report"), Officer Gelardi witnessed Plaintiff driving erratically

and swerving almost entirely into the opposite lane of traffic. *Id.* at 8 (citing Gelardi Investigation

Report, attached as Exh. O to Certification of William T. Connell ("Connell Certif."))  Officer

Gelardi then turned his vehicle around in order to follow Plaintiff, alerted Somerville Police

Headquarters that he intended to stop Plaintiff and activated his emergency lights and siren.

(Bound Brook Statement at 8-9.)  Both cars continued on Main Street through Bridgewater

Township, where Officer Gelardi was joined by a marked Bridgewater Police patrol car. (Bound

Brook Statement at 9 (citing Gelardi Investigation Report.))  Plaintiff, Officer Gelardi and the

Bridgewater Police continued into Bound Brook, where Sergeant Colombaroni joined the pursuit

and the Bridgewater Police discontinued their assistance.  (Bound Brook Statement at 9-10

2

(citing Gelardi Investigation Report.))  Plaintiff continued through Bound Brook into Middlesex, followed by Officer Gelardi and Sergeant Colombaroni. (Bound Brook Statement at 10 (citing Gelardi Investigation Report.)) Plaintiff asserts that, after determining that most of the taverns and clubs in the area were closed, he decided to go to Plainfield and so turned onto Lincoln Boulevard.  (Am. Compl., Section B, "Nature of the Case.")  Plaintiff claims that it was not until he was traveling on Lincoln Boulevard that he became aware that two police cars were following him; he asserts that when he noticed the police vehicles, he stopped at an intersection. (*Id.*; Bound Brook Statement at 10; Gelardi Investigation Report.)  Corporal Bevan and Patrolman Ellis of the Middlesex Police Department joined Officer Gelardi and Sergeant Colombaroni at the scene of the stop. (Bound Brook Statement at 11.)

Although the parties agree that certain events took place during Plaintiff's stop, the chronology of some of these events are in dispute.  Both parties concede that Officer Gelardi, accompanied by Sergeant Colombaroni, Corporal Bevan and Patrolman Ellis, approached Plaintiff's vehicle with his weapon drawn.  (Am. Compl., Section B, "Nature of the Case"; Gelardi Investigation Report.)   However, although the Defendants assert that Officer Gelardi reholstered his weapon once he perceived that Plaintiff was unarmed, (Gelardi Investigation Report), Plaintiff claims that Officer Gelardi ordered him out of his vehicle at gun point.  (Am. Compl., Section B, "Nature of the Case.") Defendants and Plaintiff concede that when Officer Gelardi commanded Plaintiff to exit the vehicle, Plaintiff did not move.  (*Id.;* Gelardi Investigation Report.)  Plaintiff asserts that the reason he did not exit the vehicle upon Officer Gelardi's request was because he was in fear for his safety.  (Am. Compl., Section B, "Nature of the Case.")

3

Plaintiff claims that one of the Individual Defendants then pulled him out of the car, threw him either on the ground or up against the side of the car and told Plaintiff that he was under arrest.  (*Id*; Plaintiff's Dep. Tr. Feb. 20, 2008 at 55:20-23, attached to Connell Certif. as Exh. Q.)  In response, Plaintiff said that "I'm not under arrest I didn't do anything." (Am. Compl., Section B, "Nature of the Case.")  Plaintiff also contended for the first time at his deposition that he was punched in the stomach by one of the Individual Defendants after being removed from his vehicle. (Plaintiff's Dep. Tr. Feb. 20, 2008 at 56:1-5.)  Plaintiff asserts that one of the Individual Defendants handcuffed him while, "at the same time," he was also OC pepper sprayed and beaten with an ASP baton stick.  (Am. Compl., Section B, "Nature of the Case.")

In contrast, Defendants assert that Plaintiff refused to exit the vehicle after Officer Gelardi issued several commands to do so.  (Gelardi Investigation Report.)  Officer Gelardi's investigative report also indicates that Officer Gelardi's statement to Plaintiff that he was under arrest and Plaintiff's retort that he was not under arrest occurred while Plaintiff was still in his vehicle. (*Id*.)  Defendants assert that, due to Plaintiff's failure to comply, the Individual Defendants attempted to physically remove Plaintiff from his vehicle and that at such time Plaintiff's vehicle was still in drive.  (Gelardi Investigation Report.)  Sergeant Colombaroni attempted to place the vehicle in park, at which time Plaintiff removed his foot from the gas pedal and his car lunged forward, hitting a Bound Brook police car. (Gelardi Investigation Report; Bound Brook Crash Investigation Report, attached as Exh. R to Connell Certif.) Sergeant Colombaroni then administered his OC pepper spray on Plaintiff, but this did not subdue Plaintiff.  (Bound Brook Statement at 11-12; Gelardi Investigation Report; Bound Book Police Department Oleoresin Capsicum (OC) Use/Exposure Report, attached as Exh. S to Connell

4

Certif. ("OC Pepper Spray Report.")) According to his report, Officer Gelardi then hit Plaintiff with his ASP baton several times about Plaintiff's legs, which enabled the Individual Defendants to remove him from the vehicle, place him on the ground and handcuff him.  (Bound Brook Statement at 11-12; Gelardi Investigation Report.)

Both parties concede that water was then poured over Plaintiff's eyes to counteract the effect of the OC pepper spray and that Plaintiff was then placed in Officer Gelardi's vehicle and transported to the Somerville Police Headquarters without incident.  (Bound Brook Statement at 12-13; Gelardi Investigation Report; Am. Compl., Section B, "Nature of the Case.") Both parties also concede that Plaintiff had no further contact with any of the Individual Defendants other than Officer Gelardi. (Bound Brook Statement at 13 (citing Plaintiff's Dep. Tr. Feb. 20, 2008 at 65:21-25; 66:9-11.))

 Plaintiff asserts that, while at Somerville Police Headquarters, he was told to "shut up" and was punched several times when he asked why he was in Somerville, although he did not identify which officer committed these acts against him. (Am. Compl., Section B, "Nature of the Case.")  Plaintiff also claims that when he refused to take a Breathalyzer test, he was OC pepper sprayed and beaten; however at his deposition Plaintiff conceded that no such incidents occurred. (Am. Compl., Section B, "Nature of the Case"; Plaintiff's Dep. Tr. Feb. 20, 2008 at 103:10-13.) Plaintiff was subsequently transferred to Somerset County Jail, where both parties concede he was OC pepper sprayed for failure to comply with an officers' directives regarding a search of his person related to his intake.  (Am. Compl., Section B, "Nature of the Case;" Bound Brook Statement at 15; Operations/Incident Report prepared by Officer Quintero of the Somerset Co. Officer of the Sheriff, attached as Exh. V to Connell Certif.)  In his Amended Complaint,

Plaintiff has not asserted that this incident violated his constitutional rights, nor has he named

Somerset County or the officer who administered the OC pepper spray at Somerset County Jail

as defendants in this action.

### 2.      Criminal Convictions

Officer Gelardi charged Plaintiff with eluding a marked patrol unit in violation of N. J.

Stat. Ann. § 2C:29-2(b) and resisting arrest in violation of N. J. Stat. Ann. § 2C:29-3(a), as well

as several motor vehicle summonses for such infractions as careless driving, driving while

intoxicated, refusal to submit to a chemical test, speeding and failure to keep to the right. (Bound

Brook Statement at 15-16 (citing Gelardi Investigation Report.))  Plaintiff initially pled guilty to

all criminal charges but later withdrew this plea.  (Bound Brook Statement at 16 (citing Notice of

Mot. to Withdraw Guilty Plea of Corbett Warren, attached as Exh. Y to Connell Certif.))   In

January 2008, Plaintiff was found guilty of eluding in the second degree as well as several motor

vehicle charges. (Bound Brook Statement at 17 (citing  Plaintiff's Dep. Tr. Feb. 20, 2008 at 29:1-

7; 207:22-209:18)).[1]  As a result of these criminal convictions, Plaintiff is currently serving a

sentence in Northern State Prison in Newark New Jersey.  (Bound Brook Statement at 18.)

However, Plaintiff contends that he is currently appealing his convictions. (Plaintiff's Letter to

the Court, Aug. 21, 2008. [Docket No. 47.])

### B.      Procedural History

Plaintiff filed a pro se complaint on or about February 23, 2007 in Superior Court of New

---

[1]Corporal Bevan also charged Plaintiff with various offenses including driving while
suspended, being an unlicensed driver, and having a suspended registration.  (Bound Brook
Statement at 17 (citing Complaint Summonses numbered 1211-G-015247, 1211-G-015248 and
1211-G-015249, attached as Exh. X to Connell Certif.)) According to the parties' submissions,
these matters have yet to be adjudicated.  (Bound Brook Statement at 17.)

Jersey, Chancery Division of Somerset County, naming only the Individual Defendants as defendants. (Bound Brook Statement at 1 (citing Pl.'s Orig. Compl., attached as Exh. A to Connell Certif.))   Each of these Defendants, with the exception of Patrolman Ellis, filed an answer. (Bound Brook Statement at 1-2, (citing Defendants Bevan, Colombaroni and Gelardi's Answers, attached as Exhs. B, C, and E, respectively, to Connell Certif.) On March 16, 2007, the action was removed to this Court by Officer Gelardi. (Notice of Removal, attached as Exh. D to Connell Certif. [Docket No. 1.])

On May 10, 2007, the Honorable John J. Hughes, U.S.M.J., by order granted Plaintiff's request to file an amended complaint and directed the Clerk of the Court to file Plaintiff's amended complaint, which was also filed on May 11, 2007. (Order attached as Exh. F to Connell Certif. [Docket No. 4]; Am. Compl. attached as Exh. G to Connell Certif. [Docket No. 5].)   In the Amended Complaint, Plaintiff asserted causes of action against the Individual Defendants and also added Somerville, Middlesex, and Bound Brook as defendants. (Bound Brook Statement at 2; Am. Compl.)

With the exception of Somerville and Ellis, each Defendant filed an answer to Plaintiffs' Amended Complaint. (*See* Bound Brook Statement 4-6, citing Answers filed by Defendants Bevan, Colombaroni, Gelardi, Bound Brook, Bevan,[2] Middlesex, attached as Exhs. H-M to Connell Certif., respectively [Docket Nos. 10-12, 14, 16, and 21, respectively.])   Pursuant to Judge Hughes' Pretrial Scheduling Order, the parties engaged in discovery, which included

---

[2] Docket No. 16 was initially listed on the Docket Sheet as Defendant Ellis' answer to the Amended Complaint. However, the actual filing reveals that it is the same document filed as Defendant Bevan's answer [Docket No. 10]. As such Defendant Ellis has yet to file an answer to Plaintiff's Amended Complaint.

Plaintiff's two-day deposition, up and until May 30, 2008.  (Bound Brook Statement at 6 (citing Pretrial Sched. Order, attached as Exh. N to Connell Certif. [Docket No. 19]); Order Setting Pl.'s Dep. [Docket No. 22].)

On June 13, 2008, Defendants Gelardi and Somerville filed a motion to dismiss for ineffective service of process. [Docket No. 30.][3] On June 26, 2008, Defendants Middlesex, Bound Brook, Bevan and Ellis, and Colombaroni filed motions for summary judgment. [Docket Nos. 31-34.]  On June 27, 2008, Defendants Gelardi and Somerville also filed a joint motion for summary judgment. [Docket No. 35.][4]   Plaintiff submitted one document in response to all of Defendants motions, which was styled as a "Notice of Motion to Deny Summary Judgement for Dismissal [*sic*]" ("Plaintiff's First Response") and was filed by the Clerk on July 11, 2008. [Docket No. 42.]  Defendants Bound Brook, Middlesex, Colombaroni, Bevan and Ellis filed a joint reply to Plaintiff's response (**"**First Joint Reply") and Defendants Gelardi and Somerville each filed a reply as well. [Docket Nos. 38, 39, 40.]

However, Plaintiff then submitted a second response to this Court ("Plaintiff's Second Response"), which was filed by the Clerk on July 30, 2008. [Docket No. 44]**.**[5]  This filing, styled

---

[3]In their reply brief relating to their their motion to dismiss for ineffective service of process filed on July 1, 2008, Defendants Gelardi and Somerville requested this Court to hold its decisions on this motion "in abeyance, pending its hearing" of the Defendants' motions for summary judgment. Gelardi and Somerville Rep. on Mot. to Dismiss, at 2 [Docket No. 36.]

[4]In their respective motions, Defendants Bound Brook, Middlesex, Colombaroni, Bevan and Ellis indicate that each joins one another's motions and the arguments set forth therein. Additionally, Defendants Somerville and Gelardi also join in the other Defendants' motion and arguments set forth therein.

[5]Although the Clerk's Office has designated Plaintiff's Second Response as a "motion," the Court will construe it as a response to Defendants' motions. As such, Plaintiff's Notice of Motion of Material Elements to Deny Summary Judgement [Docket No. 44] shall be

as a "Notice of Motion of Material Elements to Deny Summary Judgement [*sic*]," attached

several documents as exhibits, including what appears to be a second amended complaint

("Second Amended Complaint") as well as a "Notice of Jencks Act & Brady Rule Violation"

("Jencks Act Motion.") *See* Pl.'s Second Resp., Exhs. A and C.  Again, Defendants Bound

Brook, Middlesex, Colombaroni, Bevan and Ellis filed a joint reply ("Second Joint Reply"), and

Defendants Somerville and Gelardi filed a joint reply as well ("Gelardi and Somerville's Second

Reply"). [Docket Nos. 45, 46.]   These groups of Defendants also filed two responses to

Plaintiff's Jencks Act Motion. [Docket Nos. 37, 41.]

Plaintiff then submitted another filing to the Court, which was entered by the Clerk on

September 2, 2008 ("Plaintiff's Third Response"), in which he alerted the Court of his pending

appeal of his criminal convictions and reiterated several of the arguments he made in previous

filings regarding Defendants' fabrication and suppression of evidence. [Docket No. 47.]  On

September 17, 2008, Defendants Bound Brook, Middlesex, Colombaroni, Ellis and Bevin filed a

joint reply ("Third Joint Reply.") [Docket No. 48.]  Plaintiff submitted another filing to the

Court, entered on October 27, 2008 ("Plaintiff's Fourth Response"), in which he updated the

Court regarding his pending appeal of his criminal convictions. [Docket No. 49.]

## II.    DISCUSSION

### A.    Defendants' Motions for Summary Judgment

#### 1.    Summary Judgment Standard

Summary judgment may be granted only if there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also*

administratively terminated.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  Issues of material fact are genuine only

if the evidence presented could allow a reasonable jury to find for the nonmoving party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In deciding a motion for summary

judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the

nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 474 U.S. 574, 587 (1986).

However, the nonmoving party "cannot rely upon conclusory allegations in its pleadings or in

memoranda and briefs to establish a genuine issue of material fact" sufficient to defeat summary

judgment.  *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 511 (3d Cir. 1994); *see also* FED. R. CIV. P.

56(e) (nonmoving party's response must contain specific facts showing that there is a genuine

issue for trial).

### 2.    Plaintiff's Multiple Pleadings and Pro Se Status

As previously mentioned, Plaintiff has made four submissions to this Court in response to

Defendants motions for summary judgment. [*See* Docket Nos. 42, 44, 47, 49.]  Plaintiff's First

Response was three pages long and included several allegations regarding discrepancies in

various dispatch logs and vehicle maintenance logs which Plaintiff alleges demonstrate that the

Defendants had engaged in "Obstruction of Justice, Perjury and Tampering with Public Record

or Information."  (Pl.'s First Resp. at 1-2.)  In contrast, Plaintiff's Second Response, filed by the

Clerk on July 30, 2008, contains multiple exhibits, including various dispatch and vehicle

maintenance logs, investigation reports regarding the incident at issue as well as copies of MVR

policies. (*See* Pl.'s Second Resp., Exhs. D-G, L-P, R, V.)  Plaintiff's Third and Fourth Responses

are styled as letters to the Court, alerting the Court of the status of his pending appeal of his

criminal conviction and reiterating several of the arguments he made in previous filings

regarding Defendants' alleged fabrication and suppression of evidence. (Pl.'s Third and Fourth Resps.)

Notably, Plaintiff attached a second amended complaint as an exhibit to Plaintiff's Second Response, which Plaintiff asserts that he was "instructed by [Judge Hughes] to refile on 5/10/2007," and which asserts several new causes of action as well as new defendants that were not included in the Amended Complaint.  (Pl.'s Second Resp., Exh. A.)

In their Second Joint Reply, Defendants Bound Brook, Middlesex, Colombaroni, Ellis and Bevan argue that the Court should disregard Plaintiff's Second Response as in violation of Local Civil Rule 7.1(d)(6), which prohibits the filing of sur-replies without permission of the court. (Second Jt. Rep. at 2 (citing Local R. Civ. P. 7.1(d)(6)).  Defendants Gelardi and Somerville reiterate this argument in their own reply.  (Gelardi and Somerville's Second Rep. at 1.**)**  Defendants Bound Brook, Middlesex, Colombaroni, Ellis and Bevan also submitted a reply to Plaintiff's Third Response. (Third Jt. Rep. [Docket No. 48.])

It is a "well-established principle that a pro se prisoner's pleadings should be held to less stringent standards of specificity and their complaints construed liberally." *Lewis  v. Attorney General of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989) (citations omitted). "We need not, however, credit a pro se litigant's bald assertions or legal conclusions."  *Day v. Fed. Bureau of Prisons*, 233 Fed. Appx. 132 (3d Cir. 2007) (internal quotations and citations omitted).  Thus, although "[p]ro se plaintiffs cannot be held to the same strict standards as attorneys, . . . they also cannot be excused from compliance with the plain text of the federal rules." *Junne v. Atlantic City Med. Ctr.*, No. 07-5262, 2008 U.S. Dist. LEXIS 71832 at *3 n. 1 (D.N.J. Sept. 3, 2008) (quoting *Joseph v. Lopez,* No. 05-1640, 2007 U.S. Dist. LEXIS 27879, at *2 (D.N.J. Apr. 11, 2007))

(internal quotations and citations omitted).

In light of the foregoing, this Court will consider all of Plaintiff's responses in determining whether Defendants' motions should be granted, as well as Defendants' various submissions in response to these documents.  Although, as Defendants correctly note, Plaintiff did not seek permission to file these documents as is required pursuant to Local Rule 7.1(d)(6), Plaintiff did explain that the reason he filed Plaintiff's Second Response was in order to submit the documents attached as exhibits thereto, which he was not able to submit with Plaintiff's First Response due to lack of resources. (Pl.'s Second Resp. at 2 (noting monetary constraints and limited access to the law library as barriers to his filing these documents sooner.))  In light of this fact as well as his pro se status, the Court will construe his filings liberally.

However, the Court does not permit Plaintiff to file a second amended complaint.  Local Civil Rule 7.1(f) provides that a party seeking leave to file an amended complaint must file a motion for leave to file an amended complaint, attaching thereto a copy of the proposed pleading or amendments.  Local R. Civ. P. 7.1(f).  Plaintiff did not file such a motion and does not provide a justification as to why he did not file such a motion.  Further, although Plaintiff asserts that Judge Hughes granted him permission to file a second amended complaint by way of a order signed on May 10, 2007, a review of that order clearly indicates that Judge Hughes granted Plaintiff permission to file the Amended Complaint, which was attached to the Order and was filed on May 11, 2007 pursuant to Judge Hughes' instructions. (Order [Docket No. 6]., Am. Compl.)  To allow Plaintiff to deviate so greatly from the Federal Rules and file this second amended complaint at this late stage of the litigation, with several months having passed since the completion of discovery and with each Defendant having filed a motion for summary

judgment, would be prejudicial to Defendants.

### 3.    Plaintiff's Federal Claims Against the Individual Defendants

Plaintiff asserts several claims against the Individual Defendants pursuant to 42 U.S.C. §

1983, which provides a cause of action for the deprivation of rights guaranteed by the

Constitution or federal law.  Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

In the Amended Complaint, Plaintiff asserts that he is entitled to relief pursuant to 42

U.S.C. § 1983 for various constitutional violations under the Fourth, Fifth, Eighth and Fourteenth

Amendments of the United States Constitution.  (Am. Compl., Count I.)  Specifically, Plaintiff

describes the violations of his Constitutional rights as follows: "[the use of] intentional excessive

force, coercion, falsifying of documents and destruction of evidence [by the Individual

Defendants, including the lack of any] . . .  record of a vehicle maintenance log for the equipment

failure of Defendant Gelardi's vehicle to concur with his vehicle having to be jumped, which in

turn lead to his statement that the MVR vehicle was inoperative. The non preservation of the

radio dispatch or cad tapes, misidentification of Plaintiffs vehicle, and the inaccuracies of the

time the event took place, the speed estimated, and the distance traveled. . . . [And] [t]he

intentional beating of Plaintiff by forcing him to the ground face down while being struck with

ASP Baton Stick [*sic*] and OC Pepper sprayed by [the Individual Defendants] where Plaintiff was

an unarmed motorist who at the time had not broken any felony laws of the State of New Jersey .

. . ." *Id.*

Plaintiff also asserts that the Individual Defendants denied Plaintiff his "right to counsel

and due process" and subjected Plaintiff to "unusual punishment in the form of intimidation and

coercion tactics of verbal and physical abuse [in order to force Plaintiff] to submit to an blood

alcohol content test."  (Am. Compl., Count II.)  Finally, Plaintiff alleges that the Individual

Defendants conspired to violate his rights under 42 U.S.C. § 1983.  (Am. Compl., Count III.)

**a.**      **Right to Counsel Claim and Fifth Amendment Claim**

Plaintiff asserts that the Individual Defendants violated his right to counsel, presumably

pursuant to the Sixth Amendment.  The Sixth Amendment provides that "in all criminal

prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

defense." U.S. Const. amend. VI.  Additionally, the Fifth Amendment provides that "no person . .

. shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

Plaintiff does not specify which of the Individual Defendants' actions purportedly violate

his rights under these amendments.  Presumably, Plaintiff is arguing that the Individual

Defendants' attempts to force him to submit to a Breathalyzer test were violative of his Fifth and

Sixth Amendment rights.  (Am. Compl. Count II.)  However, in *Schmerber v. California*, 384

U.S. 757 (1966), the United States Supreme Court "recognized a controlling distinction between

real or physical evidence obtained from a defendant's person and that which is testimonial" and

held that the compelling of an individual to submit to a blood test does not implicate the Fifth or

Sixth Amendments. *Corbett v. Cathel*, No. 05-3429, 2006 U.S. Dist. LEXIS 59104 at *45-46

(D.N.J. Aug. 22, 2006) (citations omitted); *Schmerber*, 384 U.S. at 760-66.  As such,

14

Defendants' motions for summary judgment on these grounds are granted.

> **b.**     **Excessive Force Claims under the Eighth, Fourteenth and Fourth Amendments**

Plaintiff presumably alleges that Individual Defendants violated his rights under the Fourth, Eighth and Fourteenth Amendments through their use of excessive force against Plaintiff at various points during his stop, arrest and detention on April 9, 2006. (Am. Compl., Counts I and II.)

> **(1)**     **Eighth Amendment Claim**

"Excessive force claims for those convicted of a crime are analyzed under the Eighth Amendment." *Yarnell v. Mendez*, 509 F. Supp.2d 421, 430 (D. Del. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).  Because Plaintiff had not been convicted of a crime at the time when any of the alleged incidents of excessive force took place, Defendants' motions for summary judgment on this ground are granted.[6]

> **(2)**     **Fourteenth Amendment Claim**

"[E]xcessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment." *Yarnell,* 509 F.Supp. at 430 (citing *Sylvester v. City of Newark*, 120 Fed. Appx. 419, 423 (3d Cir. 2005)).  Courts in this Circuit have come to varying conclusions regarding whether a person who has been arrested and placed in custody but has not been arraigned is

---

[6] Plaintiff also asserts that Defendants violated his constitutional rights by inflicting "unusual punishment in the form of intimidation and coercion tactics of verbal and physical abuse."  (Compl., Count II.)  By this allegation, Plaintiff is presumably asserting a constitutional violation under the Eighth Amendment, made applicable to the individual states through the Fourteenth Amendment, which prohibits the infliction of  cruel and unusual punishment.  However, such protection is afforded to those convicted of crimes.  *See id*.; *Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981).  As Plaintiff's allegations relate to incidents occurring prior to his conviction and imprisonment, he cannot maintain such a claim.

afforded protection under the Fourteenth Amendment (as a pretrial detainee) or the Fourth

Amendment (as an arrestee). *See Bieros v. Nicola*, 860 F. Supp. 226, 231 (E.D. Pa. 1994)

(holding that "after the arrest ha[s] been completed and the individual is placed into police

custody, then the individual becomes a pretrial detainee and is subject to the Fourteenth

Amendment" (citation omitted)); *Hill v. Algor*, 85 F. Supp. 2d 391, 403 (D.N.J. 2000) ("[A]

person continues to be an arrestee subject to Fourth Amendment protection through the period of

post-arrest but pre-arraignment detention.")  Despite this dichotomy, the Court will adopt the

District Court of New Jersey's holding in *Hill* and analyze all of Plaintiff's claims, including his

allegation that he was told to "shut up" and was punched several times at the Somerville Police

Department under the construct of the Fourth Amendment. *Id.*; Am. Compl., Section B, "Nature

of the Case."[7]

### (3)     Fourth Amendment Claims

"Where . . . [an] excessive force claim arises in the context of an arrest or investigatory

stop of a free citizen, it is most properly characterized as one invoking the protections of the

Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against

unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989)

(emphasis added).  "A 'seizure' triggering the Fourth Amendment's protections occurs only when

government actors have, 'by means of physical force or show of authority, . . . in some way

---

[7]The Court notes that Plaintiff also asserts a violation of his constitutional rights to "due
process" in the heading of Count II of his Amended Complaint.  (Am. Compl., Count II.) While
the Fourteenth Amendment declares "nor shall any State deprive any person of life, liberty, or
property, without due process of law," a thorough review of all of Plaintiff's submissions
indicates that he has failed to assert any due process violation claims against Defendants. U.S.
Const. amend. XIV.

restrained the liberty of a citizen.'" *Id.* at 395, n.10, quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968). As for the test of reasonableness, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (internal citations omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry*, 392 U.S. at 20-22). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

### (a)       Plaintiff's Stop and Arrest

The Individual Defendants argue that the amount of force they used in removing Plaintiff from his car and placing him under arrest was justified in light of the fact that (1) Plaintiff led the Individual Defendants on a multi-jurisdictional pursuit while driving erratically, thereby putting other motorists and pedestrians at risk; (2) Plaintiff refused to comply with the Individual Defendants commands to exit his vehicle to such a degree that Sergeant Colombaroni was forced to deploy his OC pepper spray and Officer Gelardi was forced to use his ASP baton; (3) Plaintiff's convictions for eluding and resisting arrest "clearly demonstrate that [the Individual Defendants] were justified, if not compelled, in their use of force to control Plaintiff and effectuate his arrest;"and (4) Plaintiff cannot demonstrate an injury sufficient to support a finding

17

of a constitutional violation. (Colombaroni Mot. for SJ at 6-7, 10-11.)

Having reviewed all the evidence in the light most favorable to the non-movant, the Court holds that there remains a genuine issue of material fact as to whether Defendants' actions were reasonable in light of Plaintiff's allegedly hostile behavior during his stop and arrest.  While the evidence demonstrates that Plaintiff did not stop immediately when Officer Gelardi activated his emergency lights and siren, this fact alone does not provide sufficient reason for the amount of force used to subdue him once his vehicle was stopped.  (Bound Brook Statement at 8-9.) Further, as noted above, the parties' accounts of the incident differ in significant ways: Plaintiff asserts that he was punched in the stomach after being removed from his vehicle[8] and OC pepper sprayed and beaten after he was removed from his vehicle and while he was being handcuffed, while Defendants claim that Sergeant Colombaroni and Officer Gerlardi deployed their OC pepper spray and ASP baton, respectively, in order to remove the combative Plaintiff from his vehicle and subdue him so that he may be handcuffed.  (Am. Compl., Section B, "Nature of the Case;" Bound Brook Statement at 11-12; Gelardi Investigation Report; OC Pepper Spray Report.)  The evidence put forth by Defendants to support their version of the events are statements made by the Defendants themselves in the reports regarding the incident filed by Officer Gelardi, Sergeant Colombaroni and Corporal Bevan. (*See* Gelardi Investigative Report; OC Pepper Spray Report; Crash Investigation Report.)  Additionally, according to the Gelardi Investigation Report, there is no mobile video recording ("MVR") of the stop and arrest from Officer Gelardi's vehicle, because "there may have been an electrical problem with the system"

---

[8]Although Plaintiff failed to assert in his Amended Complaint that he was punched in the stomach by one of the Individual Defendants and only raised this allegation at his deposition, because of his pro se status, his claims will be construed liberally. *Lewis*, 878 F.2d at 722.

18

due to the fact that the vehicle had to be "jump started" earlier that evening.  (Gelardi Investigation Report.) Thus, there appears to be a dispute of material facts.

Further, Plaintiff's convictions for eluding and resisting arrest do not dictate dismissal of his excessive force claims.  In *Heck v. Humphrey,* 512 U.S. 477 (1994), the United States Supreme Court held that "if a favorable judgment on a § 1983 damages claim would 'necessarily imply the invalidity' of the plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Owens v. City of Atl. City*, No. 05-3132, 2008 U.S. Dist. LEXIS 68021, at *7-8 (D.N.J. Sept. 8, 2008) (quoting *Heck*, 512 U.S. at 486-87).  However, in *Owens,* the court held that *Heck* did not bar the plaintiff's § 1983 claim despite the fact that the plaintiff had pled guilty to resisting arrest under the same New Jersey statute under which Plaintiff was convicted in the instant case. *Owens*, at *18-19.

In that case, the court denied defendant's motion for reconsideration of its denial of defendant's motion for summary judgment on, among other claims, plaintiff's excessive force allegations.  *Id.*  It noted that "*Heck* serves to bar a plaintiff's § 1983 claim of unreasonable seizure in a general sense. But *Heck* simply does not address whether a plaintiff's § 1983 claim of excessive force would similarly be barred." *Id.* at *17.  The Court reiterated its reasoning in its first opinion, where it held that, despite the fact that "[b]y his guily plea, plaintiff has admitted that he used physical force or violence against [defendant] to purposefully prevent his arrest . . . it could still be found that [defendant] used even more force -- i.e., excessive and unreasonable force -- in effecting plaintiff's arrest than plaintiff used in resisting arrest."  *Id.* at *10-11 (internal citations omitted).

In the instant case, despite the fact that Plaintiff was convicted of resisting arrest, as the court in *Owens* explained, it is still possible that the Individual Defendants "used even more force -- i.e., excessive and unreasonable force," in effectuating Plaintiff's arrest. *Id.* As such, there remains a genuine issues of material fact regarding whether the Individual Defendants' use of force in effectuating his arrest violated Plaintiff's Fourth Amendment rights.

Finally, Defendants argue that Plaintiff has failed to demonstrate that he has suffered sufficient injury to support an excessive force claim. (Colombaroni Mot. For S.J. at 10-11 (citing *Foster v. Metropolitan Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) ("Allegations of pain, 'without some evidence of more permanent injury,' are insufficient to support an excessive force claim."))) In *In re Moore v. Novak*, No. 04-1250, 2007 U.S. Dist. LEXIS 65088 (D.N.J. Sept. 4, 2007), the court noted that the Third Circuit had addressed the issue of what degree of injury was required to put forth a claim of excessive force under the Eighth Amendment and that "the court made it clear that the minor degree of plaintiff's injury, while relevant to the totality of the circumstances, could not, on its own, serve as a complete defense to an excessive force claim." *Id.* at *16 (citing *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002)). The court then held that the Third Circuit's rationale was also applicable to the Fourth Amendment context. *Id.* at *17 (internal citations omitted).

Plaintiff has submitted a photocopy of his arrest photograph, taken at the Somerset County Sheriff's Office on the night of the alleged incidents, which Plaintiff alleges demonstrates "visual facial swelling." Pl.'s Letter Accompanying Pl.'s Second Resp. [Docket No. 43]; Pl.'s Second Response, Exh. S. However, due to the low quality of this photocopy, it is difficult to discern what evidence of injury, if any, is present in the photograph. Further, although Plaintiff

asserts in his Amended Complaint that he visited the "jail nurse" at the Somerset County Police Headquarters, neither side has produced any documents regarding this examination and the medical staff's assessment of Plaintiff's condition.  In light of these facts, there exists a genuine issue of material fact regarding Plaintiff's injuries.  (Am. Compl., Section B, "Nature of the Case").

For the foregoing reasons,  Defendants' motions for summary judgment on Plaintiff's claim of excessive force in violation of the Fourth Amendment during his stop and arrest is denied.

### (b) Plaintiff's Detention in Somerville Police Headquarters

In the Amended Complaint, Plaintiff asserts that, while at Somerville Police Headquarters, he was told to "shut up" and was punched several times when he asked why he was in Somerville. (Am. Compl., Section B, "Nature of the Case.")  However, Plaintiff fails to allege which officer or officers committed these acts against him.  Further, at his deposition, Plaintiff conceded that he was not alleging that any of the Individual Defendants were responsible for these acts and stated that his claims for excessive force stem only from the incident that occurred during his stop and arrest.  (*See* Dep. Tr. Feb. 20, 2008 at 65:21-66:16**;** Dep. Tr. Mar. 5, 2008, 160:23-162:1; 191:1-10 attached as Exh. U to the Certification of Kevin L. Spagnoli, Esq. ("Spagnoli Certif.))  As such, Defendants' motions for summary judgment on Plaintiffs' claims for excessive force pursuant to the Fourth Amendment during his detention in Somerville Police Headquarters is granted.

### (c) Plaintiff's Refusal to Submit to Blood Alcohol Test

Plaintiff also asserts that when he refused to take a Breathalyzer test at Somerville Police Headquarters, he was again OC pepper sprayed and beaten.  (Am. Compl., Section B, "Nature of the Case.")  However, at his deposition, Plaintiff conceded that no such incidents occurred in relation to his refusal to take a breathalyzer test.  (Plaintiff's Dep. Tr. Feb. 20, 2008 at 103:10-13.)  For this reason, Defendants' motions for summary judgment on Plaintiffs' claims for excessive force pursuant to the Fourth Amendment with respect to his refusal to submit to a Breathalyzer test is granted.

### c.   Falsification, Destruction of Evidence and Failure to Preserve Evidence Claims

In support of his assertions of constitutional violations, Plaintiff also makes various allegations regarding the falsification of police reports and other documents, the destruction or failure to preserve tape recordings as well as the lack of an MVR from Officer Gelardi's vehicle from the night of his arrest.  (*See e.g.* Am. Compl., Section E, "Calculations," Count I; Pl.'s First Resp.; "Notice of Mot. of Material Elements to Deny Summary Judgment," filed as Exh. C to Pl.'s Second Resp.  While Plaintiff fails to assert how these actions violated his constitutional rights, he is presumably alleging that they constitute malicious prosecution under the Fourth Amendment.  *See* Compl., Introduction; *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 820 (E.D. Pa. 2001) (noting that the "right to be free from the fabrication of evidence, falsifying documents, and malicious prosecution [under the Fourth Amendment] is clearly established.")  However, "[t]o prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

22

suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Varriale v. Borough of Montvale*, No. 04-199, 2006 U.S. Dist. LEXIS 44384 at *16 (D.N.J. Jun. 29, 2006) (citations omitted). Here, Plaintiff does not dispute that the criminal proceedings did not end in his favor and instead alerts the Court that he is in the process of appealing his convictions. Pl.'s Third Resp. [Docket No. 47]; Pl.'s Fourth Resp. [Docket No. 49]. As such, Plaintiff cannot assert a claim of malicious prosecution under 42 U.S.C. § 1983.

Additionally, when read in connection with Plaintiff's Jencks Act Motion, which was attached as Exhibit C to Pl.'s Second Resp., it seems that Plaintiff may also be asserting that the falsification, destruction and non-preservation of documents amount to constitutional violations under the "the Brady Rule," which was promulgated by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Jencks Act Motion, attached as Exh. C to Pl.'s Second Resp.; *Brady*, 373 U.S. at 87 (holding that suppression of evidence by the prosecution in state criminal proceedings violates due process where the evidence is material either to guilt or to punishment.) However, the holding in *Brady* relates to criminal prosecutions, not civil proceedings, and therefore is inapplicable to the instant case.[9] *Id.*

Further, even if Plaintiff had put forth sufficient allegations regarding how Defendant's alleged falsification, destruction and non-preservation of documents violated his constitutional rights, such claims would nevertheless be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

---

[9] Through his Jencks Act Motion, Plaintiff also seeks the production of additional documents under the Jencks Act, 18 U.S.C. § 3500, which addresses when prior statements of government witnesses are discoverable in federal criminal prosecutions. Jencks Act Motion, attached as Exh. C to Pl.'s Second Resp.; 18 U.S.C. § 3500. Because such claims are inapplicable to the instant case, Plaintiff's assertions under the Jencks Act are without merit.

23

In *Gravely v. Speranza*, 219 Fed. Appx. 213 (3d Cir. 2007), the Third Circuit upheld the district court's finding that Plaintiff's claims of falsification of records and failure to preserve evidence were barred by *Heck*, because a favorable finding on such claims would "necessarily imply the invalidity of [plaintiff's] conviction or sentence." *Gravely*, 219 Fed. Appx. at 189-90.  A similar result would occur in the instant case should the Court consider Plaintiff's claims of falsification, non-preservation and destruction of evidence at this stage.  As such, Defendants' motions for summary judgment on Plaintiffs' claims for falsification, destruction and non-preservation of evidence is granted, without prejudice.

### d.    Conspiracy to Violate Civil Rights

Plaintiff also alleges that the Individual Defendants were engaged in a conspiracy to deprive him of his constitutional and "statutory civil rights by acting in concert to ignore his requests for counsel and together creating an environment of intimidation and coercion, including the use of verbal and physical abuse . . . all in violation of 42 U.S.C. § 1983."  (Am. Compl., Count III.)

In order to demonstrate a "conspiracy," "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds*, *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003) (internal citation omitted)).  Agreement is the sine qua non of a conspiracy.  To state a claim for conspiracy under § 1983, a plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events."

24

*Hammond v. Creative Financial Planning Org*., 800 F.Supp. 1244, 1249 (E.D. Pa. 1992) (internal citation omitted).

In this case, Plaintiff has failed to allege any facts showing an agreement or plan formulated and executed by any of the Individual Defendants to achieve a conspiracy. Absent such allegations, Plaintiff's bald allegations of conspiracy are insufficient to state a claim. *See*, *e.g.*, *Swanson v. Miller*, 55 Fed. Appx. 871 (10th Cir. 2003) (upholding dismissal of conclusory allegations of conspiracy). For this reason, Defendants' motion for summary judgment on Plaintiff's conspiracy claim is granted.

### e.      Qualified Immunity

The Individual Defendants also argue that they are shielded from liability from any of Plaintiff's viable § 1983 claims by qualified immunity**.** (Colombaroni Mot. for S.J. at 34; Gelardi Mot. for S.J. at 31.) **"**A police officer who violates § 1983 can escape liability if the officer is entitled to qualified immunity." *Apata v. Howard*,  No. 05-3204, 2008 U.S. Dist. LEXIS 72321 at * 16-17 (D.N.J. Sept. 23, 2008) (citing *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007)).  "Qualified immunity shields government officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dancy v. Collier,* 266 Fed. Appx. 102, 104 (3d Cir. 2008), (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  "The inquiry into the applicability of qualified immunity is twofold: (1) whether the plaintiff demonstrated the deprivation of a constitutional right, and (2) whether that right was established at the time of the alleged deprivation." *Dancy,* 266 Fed. Appx. at 104 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). "This immunity is broad in scope and protects all but the plainly incompetent or those

who knowingly violate  the law." *Curley,* 499 F.3d at 206 (3d Cir. 2007), (quoting *Couden v.*

*Duffy,* 446 F.3d 483, 501 (3d Cir. 2006) (Weis, J. dissenting)) (internal quotations omitted).

As discussed above, there remains a genuine issue of material fact as to whether Plaintiff

has put forth sufficient evidence to make out an excessive force claim under the Fourth

Amendment with respect to the events that took place during his stop and arrest.  As such, there

remains a genuine issue of material fact as to whether Plaintiff has suffered a deprivation of a

constitutional right and thus whether the Individual Defendants are entitled to qualified immunity

on this ground.  Defendants' motions for summary judgment on the issue of qualified immunity

is denied.

### 4.      Plaintiff's Federal Claims Against the Municipal Defendants

Plaintiff also asserts several claims against the Municipal Defendants for violations of his

civil rights under 42 U.S.C. § 1983 by operation of various municipal practices, policies or

customs that Plaintiff alleges "encouraged and caused" what can generally be termed

"constitutional violations" by the Individual Defendants. (Am. Compl., Count II.)  Plaintiff also

asserts that the Municipal Defendants failed to adequately "train, direct, supervise or control" the

Individual Defendants and therefore are liable to Plaintiff.  *Id.*

 "A municipality may not be held liable under § 1983 for the constitutional torts of its

employees by virtue of *respondeat superior.*" *Hill v. Borough of Kutztown*, 455 F.3d 225, 246

(3d Cir. 2006) (emphasis in original). A municipality may, however, be held liable for the

conduct of an individual officer when that conduct implements an official policy or custom. *See*

*id.* (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)).

"A government policy or custom can be established in two ways. Policy is made when a

decisionmaker possessing final authority to establish municipal policy with respect to the action

issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom

when, though not authorized by law, such practices of state officials [are] so permanent and

well-settled as to virtually constitute law." *Solomon v. Phila. Hous. Auth.*, 143 Fed. Appx. 447,

456 (3d Cir. 2005) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).

"When a municipality's failure to train its employees in a relevant respect evidences a

deliberate indifference to the rights of its inhabitants, such failure to train may itself constitute a

policy or custom that is actionable under § 1983." *Marable v. W. Pottsgrove Twp.*, 176 Fed.

Appx. 275, 283 (3d Cir. 2006) (quotations omitted), quoting *City of Canton, Ohio v. Harris*, 489

U.S. 378, 389 (1989). "However, when a single decision is the basis of the alleged constitutional

violation, a municipality generally may incur . . . liability only where the decisionmaker is a

municipal policymaker." *Marable*, 176 Fed. Appx. at 283 (internal citation and quotations

omitted)). "Likewise, a mere showing that a particular officer violated policy, or that better

training would have enabled the officer to avoid the injury-causing conduct, is insufficient to

establish a municipality's liability under § 1983 for failure to train." *Id.* (citing *Simmons v. City of

Phila.*, 947 F.2d 1042, 1060 (3d Cir. 1991)).

In light of the foregoing, Plaintiff's claims against the Municipal Defendants under 42

U.S.C. § 1983 cannot survive.  Plaintiff has pointed to no policy or custom instituted by any of

the Municipal Defendants by which they have  "encourage or caused" the Individual Defendants

to perform constitutional violations. (Am. Compl., Count II.)  Further, as Defendants note,

Plaintiff conceded during his deposition testimony that the Municipal Defendants have not

promulgated any policies that permit violations of civil rights by their employees.  (Bound Brook

Mot. for S.J.; Plaintiff's Dep. Tr. Mar. 5, 2008 at 273:4-9.)  Instead, Plaintiff asserted that the Individual Officers "did not follow their police guidelines and procedures in effectuating this arrest and the events that occurred on April 9th, 2006." *Id.* at 273:15-18.  Plaintiff's claim that the Individual Defendants failed to adhere to existing policies and guidelines during his stop and arrest is not sufficient evidence to establish the Municipal Defendants' liability under 42 U.S.C. § 1983 for failure to train.  *Marable*, 176 Fed. Appx. at 283, citing *Simmons v. City of Phila.*, 947 F.2d 1042, 1060 (3d Cir. 1991).

For the foregoing reasons, the Court will therefore grant the Defendants' motions for summary judgment on Plaintiff's claims against the Municipal Defendants under 42 U.S.C. § 1983.

### 5.    Attorney's Fees

Plaintiff also requests that he be awarded "[c]osts of this action, including reasonable attorney fees . . . pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988."  (Am. Compl. Section C, "Cause of Action," subsection c.)    However, as Defendants correctly note, it is well settled in this Circuit that "pro se non-lawyer litigants cannot be awarded attorney's fees under [42 U.S.C. § 1988.].  *Owens-El v. Robinson*, 694 F.2d 941, 943 (citing *Pitts v. Vaughn*, 679 F.2d 311 (3d Cir. 1982); *see also Daley v. Warden*, No. 05-1955, 2006 U.S. Dist. LEXIS 11148*, at *2-3* (M.D. Pa. Feb. 22, 2006) ("In the context of a pro se plaintiff's civil rights action, the United states Supreme Court observed that 'the Circuits are in agreement … on the proposition that a pro se litigant who is not a lawyer is *not* entitled to attorney's fees.' *Kay v. Ehrler*, 499 U.S. 432, 435 n.5 (1991) (emphasis in original) (citing *Gonzalez v. Kangas*, 814 F.2d 1411 (9th Cir. 1987); *Smith v. De Bartoli*, 769 F.2d 451, 453 (7th Cir. 1985), *cert. denied*, 475

U.S. 1067, (1986); *Turman v. Tuttle*, 711 F.2d 148 (10th Cir. 1983) (per curiam); *Owens-El v.*

*Robinson*, 694 F.2d 941 (3d Cir. 1982); *Wright v. Crowell*, 674 F.2d 521 (6th Cir. 1982) (per

curiam); *Cofield v. Atlanta*, 648 F.2d 986, 987-988 (5th Cir. 1981); *Lovell v. Snow*, 637 F.2d 170

(1st Cir. 1981); *Davis v. Parratt*, 608 F.2d 717 (8th Cir. 1979) (per curiam)). In light of the

foregoing, Plaintiff is not entitled to attorney's fees under 42 U.S.C. § 1988 and Defendants'

motions for summary judgment are granted on that ground.

### 6.     State Law Claims

Plaintiff also asserts several state law claims in his Amended Complaint.  Specifically,

Plaintiff asserts claims for assault and battery, intentional infliction of emotional distress,

negligence, malicious abuse of process, false arrest and false imprisonment against the Individual

Defendants as well as claims of negligent supervision and training against the Municipal

Defendants (collectively, the "Tort Claims.") (Am. Compl., Introduction, Counts IV, V, VI, VIII

and VII.)  Defendants request summary judgment that Plaintiff failed to file a notice of tort claim

and has therefore waived the Tort Claims. The Court will grant Defendants' request.

Under N.J. Stat. Ann. § 59:8-9,

> A claimant who fails to file notice of his claim within 90 days as provided
> in section 59:8-8 of this act, may, in the discretion of a judge of the
> Superior Court, be permitted to file such notice at any time within one year after
> the accrual of his claim provided that the public entity or the public employee
> has not been substantially prejudiced thereby. Application to the court for permission
> to file a late notice of claim shall be made upon motion supported by affidavits based
> upon personal knowledge of the affiant showing sufficient reasons constituting
> extraordinary circumstances for his failure to file notice of claim within the period
> of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to
> file a late notice of claim within a reasonable time thereafter; provided that in no
> event may any suit against a public entity or a public employee arising under this
> act be filed later than two years from the time of the accrual of the claim.

N.J. Stat. Ann. § 59:8-9.

"The statute does not define what circumstances are to be considered 'extraordinary' and necessarily leaves it for a case-by-case determination . . . on the facts presented." *R.L. v. State-Operated Sch. Dist. of Newark*, 387 N.J. Super. 331, 340 (N.J. Super. Ct. App. Div. 2006) (citations omitted).

In the instant case, Plaintiff never filed a notice of claim under N.J. Stat. Ann. § 59:8-9. Further, Plaintiff offers no excuse as to why he failed to file such notice.  The most likely conclusion is that Plaintiff was not aware of the notice requirement.  However, "case law makes it clear that ignorance of the law or failure to seek legal advice will not excuse failure to meet the [notice of tort claim] filing deadline." *Hyman Zamft & Manard, L.L.C. v. Cornell*, 309 N.J. Super. 586, 593 (N.J. Super. Ct. App. Div. 1998) (internal citations omitted).

The Court therefore finds that there is no genuine issue of material fact that Plaintiff waived any claim to the Tort Claims that he may have had by his failing to file a notice of claim within the time-frame set out under N.J. Stat. Ann. § 59:8-9.  The Court will grant Defendants' motions for summary judgment as to the Tort Claims.

## B.     Defendants Gelardi and Somerville's Motion to Dismiss

In their motion to dismiss, Defendants Gelardi and Somerville argue that Plaintiff's claims should be dismissed as against them pursuant to Federal Rule of Civil Procedure 12(b)(5) because Plaintiff failed to serve either defendant "as directed by [Judge Hughes] on May 10, 2007 and in [Judge Hughes'] Order, dated May 10, 2007 "and because they were not served by Plaintiff within 120 days of the filing of the Amended Complaint, as is required under Federal Rule of Civil Procedure 4(m).  Mot. to Dismiss at 1-2 [Docket No. 30].

While Rule 12(b)(5) permits dismissal of an action based on a defect in the process or

service of process, it does not mandate dismissal.  Rather, Rule 4(m) provides that upon finding

that either the process or the service of process was insufficient, a court has the discretion to

either dismiss the action without prejudice or to quash service and order the plaintiff to effect

service within a specified time. *See, e.g.*, *Dimensional Communications, Inc. v. OZ Optics Ltd.*,

218 F. Supp. 2d 653, 655 (D.N.J. 2002).  This Court has held that "[d]ismissal for insufficient

service of process is not warranted . . . where plaintiffs are not culpable and there has been no

indication of prejudice to the defendant." *In re Bulk [Extruded] Graphite Prods. Antitrust Litig*.,

No. 02-6030, 2006 U.S. Dist. LEXIS 45762, *13-14 (D.N.J. Apr. 24, 2006) (citing 5A Wright &

Miller, Federal Practice & Procedure § 1353 at 342 (3d ed. 2005)).

    Courts have applied a two-step analysis in determining whether to use its discretion to

order a plaintiff to effect service within a specified time: "[f]irst, a court must determine whether

good cause exists for granting an extension of time. If good cause exists, the extension must be

granted; if not, then the court may use its discretion in deciding whether to dismiss the case

without prejudice or to extend time for service." *Connolly v. Mitsui O.S.K. Lines*, No. 04-5127,

2006 U.S. Dist. LEXIS 59882, at *8 (D.N.J. Aug. 24, 2006) (citing *McCurdy v. Am. Bd. of

Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998); *MCI Telecomms. Corp. v. Teleconcepts, Inc.*,

71 F.3d 1086, 1098 (3d Cir. 1995); *Petrucelli v. Bohringer and Ratzinger*, *GMBH*, 46 F.3d 1298,

1305 (3d Cir. 1995); *Mettle v. First Union Nat'l Bank*, 279 F. Supp.2d 598, 604 (D.N.J. 2003)).

    In the instant case, Plaintiff has made no arguments regarding his failure to serve

Defendants Gelardi and Somerville.  However, it is clear that these defendants have not been

prejudiced by this failure, as they have been active participants in this litigation and have even

filed their own motion for summary judgment in this matter, which has been considered by this

Court.  In light of the foregoing as well as  Plaintiff's pro se status and in the interest of judicial

economy, the Court will deny  Defendants Somerville and Gelardi's motion to dismiss.  Plaintiff

is ordered to effect service of the Amended Complaint on Defendant Gelardi in accordance with

the Federal Rules of Civil Procedure Rule 4(m) within twenty (20) days from the date herewith.[10]

 Should Plaintiff fail to serve Defendant Gelardi within this time frame, Plaintiff's claims are

dismissed as against him.

### III.    CONCLUSION

In summary, Plaintiff's only remaining claims are those asserted for excessive force under

the Fourth Amendment against Defendants Gelardi, Colombaroni, Bevan and Ellis in relation to

the events that occurred during Plaintiff's stop and arrest in the Borough of Middlesex on the

night of April 9, 2006.

For the foregoing reasons, Defendant Bound Brook's motion for summary judgment

[Docket No. 32] is granted; Defendant Middlesex's motion for summary judgment [Docket No.

31] is granted; Defendant Colombaroni's motion for summary judgment [Docket No. 34] is

granted in part and denied in part; Defendants Bevan and Ellis' motion for summary judgment

[Docket No. 33] is granted in part and denied in part; Defendants Gelardi and Somerville's

motion for summary judgment [Docket No. 35] is granted in part and denied in part; and

Defendants Gelardi and Somerville's motion to dismiss [Docket No. 30] is denied. Plaintiff is

ordered to effect service of the Amended Complaint on Defendant Gelardi in accordance with the

Federal Rules of Civil Procedure Rule 4(m) within twenty (20) days from the date herewith.

---

[10]Because summary judgment has been granted with respect to Plaintiff's claims against
the Municipal Defendants, including Defendant Somerville, Plaintiff's service of the Amended
Complaint on Defendant Somerville is moot.

Should Plaintiff fail to serve Defendant Gelardi within this timeframe, Plaintiffs' claims are dismissed as against him. An appropriate form of Order accompanies this Memorandum Opinion.

      Dated: January 14, 2009

 

 

                                                                    _____/s/ Garrett E. Brown, Jr._____
                                                                    GARRETT E. BROWN, JR., U.S.D.J.